UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| SEAN CONWAY, | ) | |
| Plaintiff, | ) | Civil No. 13-07-GFVT |
| V. | ) | |
| | ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendant. | ) | **ORDER** |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon the Motion to Dismiss [R. 7] filed by Defendant Portfolio Recovery Associates, LLC, and the Motion to Strike filed by Plaintiff Sean Conway, [R. 11] which is related to the Reply brief associated with the Motion to Dismiss. As will be explained below, this case turns on where the breach of contract to pay a debt occurred. Conway argues that the contract was breached in the location where the payment was supposed to be received (Virginia), while PRA contends that the breach occurred when and where Conway made the decision not to pay his debt (presumably Kentucky). For the reasons set forth herein, both motions are DENIED.

**I**

The relevant factual background is the same for both motions. The Defendant, Portfolio Recovery Associates, LLC ("PRA"), filed suit against Sean Conway in Shelby District Court of Shelby, Kentucky, on March 28, 2012, seeking to collect an alleged debt on a credit card. [R. 1 at 2; R. 8 at 2.] At all times relevant to this dispute Conway was a citizen and resident of Shelby County, Kentucky. [R. 7 at 2.] Capital One Bank (USA), N.A. ("Capital One") issued a credit

card to Plaintiff Conway in September, 2006, and Mr. Conley subsequently used the credit card to make personal purchases. [R. 7 at 2.] Conley made his last payment on his Capital One credit card on February 29, 2008, [R. 1-1 at 3] and failed to make the next payment in March, 2008, or any further payments afterward. In October, 2008, Capital One charged off Conway's balance of $1,288.89. PRA then purchased Conway's account from Capital One on November 17, 2008. The parties do not dispute that PRA is the legitimate assignee of Capital One, thereby retaining all claims and defenses against Conway that Capital One would have had. [*See* R. 7 at 2; R. 8 at 2.] The parties also do not dispute that PRA acquired Capital One's cause of action against Conway, nor do they dispute that this cause of action accrued no later than late March, 2008, and no earlier than February 29, 2008. [*See* R. 8 at 2, 5.]

In March, 2012, approximately four years after PRA's cause of action against Conley accrued, PRA filed a debt collection lawsuit against Conley in district court in Shelby County, KY. On October 18, 2012, the parties filed a Joint Stipulation of Dismissal in Shelby District court, dismissing all claims against Conway. Conway then filed suit in this Court, alleging that PRA had violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq*. by bringing a collection suit against Conway that was time-barred by the statute of limitations. [R. 1.] Conway also brings this suit on behalf of all other persons in Kentucky similarly situated. Conway's complaint seeks statutory damages for the alleged violation of the Act, attorney's fees, litigation costs, and any other relief the Court deems appropriate.

PRA has filed a motion to dismiss Conway's claims pursuant to Fed. R. Civ. P. 12(b)(6), contending that Conway has failed to state a claim upon which relief may be granted because Conway relies upon the Virginia statute of limitations instead of Kentucky's statute. According

to PRA, there has been no violation of the FDCPA because PRA brought the collection suit against Conway within Kentucky's five-year statute of limitations, and thus the suit was not time-barred. [R. 7 at 1-3.] Conway responded by arguing that Kentucky's borrowing statute is applicable in this case, and that under Kentucky's borrowing statute, Virginia's three-year statute of limitations should apply instead of Kentucky's. Thus, the issue before the Court is whether Kentucky's borrowing statute requires the application of Kentucky's or Virginia's statute of limitations. Because Conley's complaint is based entirely on the premise that PRA brought a time-barred collection suit against him, if PRA's suit was within the statute of limitations, then Conway has failed to state a claim that can survive a 12(b)(6) motion.

## II

### A

In a motion to dismiss brought pursuant to Rule 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *Id*. (citation omitted). Such a motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Moreover, the facts that are pled must rise to the level of plausibility, not just

3

possibility— a complaint containing "facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B**

The purpose of the FDCPA is to prevent "the use of abusive, deceptive, and unfair debt collection practices" used "by many debt collectors." 15 U.S.C. §1692(a). Conley's complaint alleges that PRA has violated §1692f(1) and §1692e(5) of the Act by attempting to collect a debt that was barred by the statute of limitations. These sections prohibit debt collectors from using "any false, deceptive, or misleading representation" in collecting the debt, including a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. §1692e(5). According to §1692f, a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt," which includes a prohibition on collecting any debt that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1). Conley's complaint alleges that bringing a collection suit barred by the statute of limitations falls into one or both of these categories.

When evaluating whether a debt collector's particular action falls within the meaning of the FDCPA, "courts apply an objective test based on the understanding of the least sophisticated consumer." *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 331 (6th Cir. 2006) (internal quotations omitted). Although the Sixth Circuit has not definitively ruled on exactly how

4

attempts to collect time-barred debts fit within the framework of the FDCPA, there is broad agreement among other courts that the filing of a lawsuit to collect a time-barred debt may constitute a violation of various portions of §1692e, if the debt collector knows or should have known that the debt is time-barred, largely because doing so is deceptive to the unsophisticated consumer. *Id*. at 332 (citing *Freyermuth v. Credit Bureau Servs., Inc*., 248 F.3d 767, 771 (8th Cir. 2001)); *Goins v. JBC & Assoc*., 352 F.Supp.2d 262 (D. Conn. 2005); *Shorty v. Capital One Bank*, 90 F.Supp.2d 1330 (D.N.M. 2000); *Kimber v. Fed. Fin. Corp*., 668 F.Supp. 1480 (M.D. Ala. 1987)). *See also Hall v. LVNV Funding, LLC*, 2013 WL 5550838, at*2 (W.D. Ky. Oct. 8, 2013); *Brewer v. Portfolio Recovery Assocs*., 2007 WL 3025077, at *2 (W.D. Ky. Oct. 15, 2007); *Lashbrook v. Portfolio Recovery Assocs., LLC*, 2013 WL 4604281, at *8 (E.D. Mich. Aug. 29, 2013).

Here, the parties do not dispute that Conway breached his contract with Capital One and is a "debtor" within the meaning of the FDCPA, nor do they dispute that PRA has the right to collect on that debt as a "debt collector" and is therefore bound by certain requirements of the FDCPA. Instead, the parties' primary dispute at this juncture is whether the debt collection action was time-barred by the applicable statute of limitations because if the state court suit was in fact not barred by the statute, then Conley's claim should be dismissed.

### III

### A

Conway first argues that for statute of limitations purposes, an action concerning the collection of a credit card debt should be treated as an unwritten contract, rather than a written contract. Despite a lack of controlling precedent on this issue in Kentucky, many other

5

jurisdictions commonly treat credit card agreements as contracts not in writing, because such agreements typically do not contain on their face all the essential terms necessary to constitute a written contract. [R. 8 at 6-13.] *See, e.g., Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876, 883-84 (Ill. App. 2009) (applying statute of limitations for an oral contract to a credit card action because the credit card agreement did not include all essential elements within its four corners); *Delrey v. Capital One Bank*, 2009 WL 5103229 (Fla. Cir. Ct. July 7, 2009) (examining Virginia law in determining that Virginia's statute of limitations for unwritten contracts should apply to a Capital One credit card agreement because it did not on its face show a completely concluded agreement). For an agreement to constitute a written contract "all its terms and provisions can be ascertained from the instrument itself." *Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953) (internal citations omitted). As in *Delrey*, Conway's Capital One customer agreement lacks several essential terms of a written contract, including Conway's signature and the applicable interest rate, among other things. [*See* R. 8-2.]

As PRA accurately points out, however, this question is not at issue in this case because the following facts are undisputed: 1) PRA's collection lawsuit was brought *four* years after the cause of action accrued; 2) the applicable statute of limitations in Kentucky for actions on accounts and *unwritten* contracts is five years, KRS 413.120(1), (10)-(11); 3) the applicable statute of limitations in Virginia for unwritten contracts such as credit card agreements is three years, Va. Code § 8.01-246(4); and 4) the Kentucky statute of limitations for written contracts to pay money is fifteen years, KRS §413.090. Therefore, if Virginia's three-year statute of limitations applies, the suit is barred, while if either Kentucky statute applies, PRA's suit was well within both the five-year and the fifteen-year time periods, regardless of whether the debt is

jurisdictions commonly treat credit card agreements as contracts not in writing, because such agreements typically do not contain on their face all the essential terms necessary to constitute a written contract. [R. 8 at 6-13.] *See, e.g., Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876, 883-84 (Ill. App. 2009) (applying statute of limitations for an oral contract to a credit card action because the credit card agreement did not include all essential elements within its four corners); *Delrey v. Capital One Bank*, 2009 WL 5103229 (Fla. Cir. Ct. July 7, 2009) (examining Virginia law in determining that Virginia's statute of limitations for unwritten contracts should apply to a Capital One credit card agreement because it did not on its face show a completely concluded agreement). For an agreement to constitute a written contract "all its terms and provisions can be ascertained from the instrument itself." *Mills v. McGaffee*, 254 S.W.2d 716, 717 (Ky. 1953) (internal citations omitted). As in *Delrey*, Conway's Capital One customer agreement lacks several essential terms of a written contract, including Conway's signature and the applicable interest rate, among other things. [*See* R. 8-2.]

As PRA accurately points out, however, this question is not at issue in this case because the following facts are undisputed: 1) PRA's collection lawsuit was brought *four* years after the cause of action accrued; 2) the applicable statute of limitations in Kentucky for actions on accounts and *unwritten* contracts is five years, KRS 413.120(1), (10)-(11); 3) the applicable statute of limitations in Virginia for unwritten contracts such as credit card agreements is three years, Va. Code § 8.01-246(4); and 4) the Kentucky statute of limitations for written contracts to pay money is fifteen years, KRS §413.090. Therefore, if Virginia's three-year statute of limitations applies, the suit is barred, while if either Kentucky statute applies, PRA's suit was well within both the five-year and the fifteen-year time periods, regardless of whether the debt is

considered a written or unwritten contract. Conway's single allegation is that the collection suit was barred by *Virginia's* three-year statute of limitations, and thus if that three-year time limit is not applicable to PRA's state court suit, then Conway has no other claim before this Court. Because this is undisputed, the Court need not engage in further analysis of whether the agreement is an unwritten contract.

Because of the discrepancy in the two statutes, the Court next turns to the application of Kentucky's borrowing statute. Although the choice of law provision in the credit card agreement specifies that Virginia law should govern the agreement wherever federal law does not apply, "contractual choice-of-law clauses incorporate only substantive law, not procedural provisions such as statutes of limitations." *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Thus, unless the choice of law provision in the parties' agreement expressly provides otherwise, the procedural law of the forum state will determine issues concerning which state's statute of limitations applies. *Id*. Accordingly, the Court will apply Kentucky's borrowing statute in this matter. The purpose of state borrowing statutes is generally to bar suits against the state's residents "if the right to sue [the resident] had already expired in another state where the combination of circumstances giving rise to the right to sue had taken place. Moreover, limitations on federally created rights to sue have similarly been considered to be governed by the limitations law of the state where the crucial combination of events transpired." *Cope v. Anderson*, 331 U.S. 461, 466 (1947). The Kentucky statute of limitations borrowing statute provides as follows:

> When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the period of limitation prescribed by the laws of this state for a like cause of

7

action, then said action shall be barred in this state at the expiration of said shorter period.

Ky. Rev. Stat. § 413.320. Thus, if the cause of action occurred outside of Kentucky, and if the place where the cause of action accrued has a shorter statute of limitations for the particular cause of action than Kentucky has, the shorter statute of limitations from the other jurisdiction must be used instead of Kentucky's statute. *See Willits v. Peabody Coal Co.*, 188 F.3d 510, 1999 WL 701916 (6th Cir. Sept. 1, 1999) (unpublished table decision).

The parties do not dispute that Kentucky's borrowing statute should be applied, nor do they dispute how it should be interpreted. Instead, the parties primarily dispute where the cause of action accrued, which is the "key factor" in any analysis of how to apply the borrowing statute. *White v. Hartford Life Ins. Co.*, 2008 WL 4104487, at *6 (W.D. Ky. Sept. 3, 2008). To determine where a cause of action accrued, the Court must apply Kentucky law. *See Cope v. Anderson*, 331 U.S. at 466-67 (applying state law to determine where a cause of action accrued for purposes of that state's borrowing statute). The problem in this case is that Kentucky law is unclear concerning *where* a breach of contract action accrues.[1] Although some lower Kentucky courts have addressed similar questions, this exact problem has not yet reached the Kentucky's appellate courts so as to provide more definitive guidance. Other federal courts interpreting this issue in the context of Kentucky law have not directly answered this question either in the

---

[1] Defendant PRA states in its Motion to Dismiss that "it is well settled under Kentucky law" that a breach of contract occurs, and therefore also accrues, in "the location where the decision was made not to make a payment" rather than the location where the payment was to be received. [R. 7 at 5.] However, the notion that such a principle is "well settled" is incorrect – on the contrary, such an issue is far from settled in Kentucky law, as the cases to which even PRA cites make abundantly clear. In PRA's motion, just before its statement about Kentucky law, PRA cites to a case that says on the same page referenced by PRA that "there is little or no law in Kentucky concerning *where* a breach of contract action accrues." *Willits*, 1999 WL 701916, at *12. Other federal courts facing similar issues have also stated that Kentucky law on this matter is unclear. *See, e.g., Swanson v. Wilson*, 423 F.App'x 587, 593 (6th Cir. 2011) ("'Where' a cause of action accrues, for purposes of Kentucky's borrowing statute, is unclear.").

8

specific context of contractual obligations to pay a debt. *See, e.g.*, *Hall v. LVNV Funding, LLC*, 2013 WL 5550838 (W.D. Ky. Oct. 8, 2013) ("The Court can find no Sixth Circuit opinion directly on point.").

When a federal court must apply substantive state law concerning an issue of first impression, or an issue which that state's courts have not comprehensively addressed or definitively ruled on, it is the Court's "duty. . . to decide unsettled issues of state law as a Kentucky court would decide them." *Kelly v. McFarland*, 243 F.Supp.2d 715, 717 (E.D. Ky. 2001) (citing *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1289-90 (6th Cir. 1982)); *see also Ennes v. H&R Block Eastern Tax Servs., Inc.*, 2002 WL 226345, at *2 (W.D. Ky. Jan. 11, 2002) (citing the same). In doing so, the Court "must predict" how the state courts would rule.[2] *Id.*; *see also Swanson v. Wilson*, 423 F.App'x 587, 594 (6th Cir. 2011) (noting that in "highly uncertain area[s] of state law," federal courts must "make an educated '*Erie* guess'") (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)). In the case at hand, this requires a ruling on the narrow question of where the cause of action accrues, according to the meaning of that concept in Kentucky's borrowing statute.

While Kentucky appellate courts may not have addressed this in the specific context of contractual payments on credit card debts, some helpful guidance can be found in relevant caselaw concerning accrual in other contexts. For instance, when the "location of accrual is not readily apparent," other federal courts in this position have looked to *when* a cause of action accrues, because the time of accrual is integrally related to the place of accrual. *Swanson*, 423

---

[2] The Court notes that neither party has suggested that the Court abstain from ruling on this issue of law. The Court also does not believe abstention would be proper here since the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

9

F.App'x at 593; *see also CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 243 n. 7 (6th Cir. 2009) (stating that "the elements of time and place of accrual are inextricably intertwined"); *Willits*, 1999 WL 701916, at *12. In determining when a cause of action accrues, Kentucky courts in several cases have also looked to when the *injury* occurred. *See, e.g., Meade County Bank v. Wheatley*, 910 S.W.2d 233, 235 (Ky. 1995) ("Without damages, there is no ripened claim."); *Alagia, Day, Trautwein & Smith v. Broadbent*, 882 S.W.2d 121, 126 (Ky. 1994) (finding statute of limitations did not begin to run until damages were fixed because a cause of action does not arise until there is an injury producing damages); *Saylor v. Hall*, 497 S.W.2d 218, 225 (Ky. 1973) ("A cause of action does not exist until the conduct causes injury that produces loss or damage."); *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 272 (Ky. App. 2005) (holding that "without legally cognizable damages, there is no ripe claim. . ."). Crucial to solving that mystery in this particular case, however, is whether the breach of contract occurred at the moment when Conway made the decision not to pay his bill, or at the moment that the deadline passed and Capital One knew that it had not received payment at the specified location in Virginia. Both parties have advanced plausible and well-reasoned arguments in favor of each position, but none of the cases the parties rely upon are exactly applicable to the facts before us here, nor do they provide controlling authority on this issue.

However, a recent Kentucky Supreme Court case relied on the cases cited above in addressing the issue of where a cause of action occurs. *See Abel v. Austin*, 411 S.W.3d 728, 736 (Ky. 2013). In *Abel v. Austin,* a case concerning deficient payments of settlement proceeds paid to Kentucky residents who were appellants in a lawsuit in Alabama, Kentucky's Supreme Court was faced with a similar issue to the one at hand concerning whether Kentucky's borrowing

statute required the application of Kentucky's or Alabama's statute of limitations. In applying Kentucky's borrowing statute, the court acknowledged that while "we have often discussed *when* an action accrues, we have less frequently addressed the question of *where*, for purposes of KRS 413.320, the cause of action accrued." *Abel*, 411 S.W.3d at 736. The court reiterated that *where* an action accrues is "inextricably intertwined with *when* it accrues," quoting the Sixth Circuit opinion in *Helmers v. Anderson* to explain that "[t]he place where a cause of action arises is the place where the operative facts that give rise to the action occur. . . . [I]t is the happening of the last of such facts which brings the cause of action into existence." 156 F.2d 47, 50 (6th Cir. 1946). The *Abel* court then cited to several Kentucky cases to establish that a cause of action cannot exist "until the conduct causes injury that produces loss or damage," *Abel*, 411 S.W.3d at 736 (quoting *Alagia*, 882 S.W.2d at 126), and that claims do not properly accrue "until reasonably ascertainable damages are incurred." *Id*. (quoting *Pedigo v. Breen*, 173 S.W.3d 260, 272 (Ky.App. 2005)). The *Abel* court used these cases to support its finding that the injury occurred when the damages were ascertainable, which was when "the deficient payments were *received* in Kentucky," and therefore Kentucky was also where "the injurious consequences of the alleged wrongful conduct occurred." *Id*. at 737 (emphasis added).

The Court acknowledges at the outset that the specific facts of *Abel* are slightly different from the case at hand because in *Abel*, both the deficient payments of the settlement distribution, as well as the receipt of those deficient payments, occurred in Kentucky. However, the Court must make its best prediction as to how Kentucky courts would decide the present case, *see Overstreet*, 669 F.2d at 1289-90, and the reasoning in *Abel* therefore is still instructive and can be applied to the present case. In *Abel*, one party wired a lump sum of the settlement money for

11

all the appellants to another party in Kentucky, who then distributed the settlement incorrectly to the several appellants who resided in Kentucky. *Abel*, 411 S.W.3d at 731-32. The court rejected the notion that the cause of action accrued in Alabama, where the lump sum was sent from. *Id.* at 737. Instead, the court placed the most emphasis on the fact that the deficient payments were *received* in Kentucky, because the receipt of the deficient payments meant that "the injurious *consequences* of the alleged wrongful conduct occurred in Kentucky." *Id.* (emphasis added). Applying the same reasoning to the case at hand, the "injurious consequences" caused by Conway's failure to pay his credit card debt occurred in Virginia where Capital One was located and expected to receive payment. *See id.* Moreover, because Conway never sent any payment at all, the time and place of his failure to pay cannot be readily determined without referencing the time and place where the payment was to be received.

This conclusion is further supported by other courts within the Sixth Circuit that have determined accrual by focusing on the timing of the last event which triggers liability because a cause of action "is the fact or combination of facts which gives rise to a right of action, the existence of which affords a party a right to judicial interference in his behalf." *Helmers v. Anderson*, 156 F.2d 47, 50 (6th Cir. 1946) *aff'd sub nom. Cope v. Anderson*, 331 U.S. 461 (1947) (quoting other sources of Ohio, Tennessee, and Fifth Circuit law). Thus, "it is the happening of *the last of such facts* which brings the cause of action into existence." *Id.* (emphasis added). In *Helmers*, a decision which the Kentucky Supreme Court quoted extensively in *Abel*, the Sixth Circuit focused on determining the time and location of the last act that allowed the plaintiff to bring a lawsuit, explaining that such an act, "or the failure to act where there is a duty to do so," is "the critical event which transforms a potential liability" into a "presently enforceable" cause

of action. *Id*. at 50 (citing *Brown v. O'Keefe*, 300 U.S. 598, 603 (1937)). As in Conway's case, *Helmers* also involved a failure to pay an amount that was due, and in identifying the last act that triggered accrual, the Sixth Circuit decided that the obligation to pay the assessment that was due "must have matured" by the passage of time – i.e. by the passage of the date on which payment was due. As the court in *Helmers* explained, "[t]he failure of the stockholder to pay on or before the date set for payment. . . is accordingly the critical event which transformed the liability into a cause of action. At that time and upon the happening of the last of those events the Statute of Limitations began to run." *Id*. at 51. Similarly, the last occurrence necessary for Capital One (or PRA in Capital One's place) to bring suit was the passage of the date on which payment was due. Where Conway was physically located when he made the decision not to pay his debt is indeterminable upon the facts presented, and therefore the event that triggered an ability to bring a collection action against him was when the due date for payment passed, and continued to pass without any payment being received. That event occurred in Virginia because Virginia is where Conway was obligated to make his payment.

Particularly in the context of credit card agreements, the deadline for payment serves a contractual purpose – that of alerting the credit card company that the consumer may have defaulted on the debt and that they now have a possible cause of action against the consumer. Conway's credit card agreement stated that he would be in default if "you do not make any payment when it is due," thus making the due date material to the contract as the trigger of breach. Indeed, the only way Capital One could know Conway had failed to make a payment was when payment was not *received* on the due date. [*See* R. 8-2 at 5.] Thus, Capital One could not have brought a lawsuit against Conley before the date on which payment was due had

13

passed.³ Because the due date passing without payment being received was the final event that allowed Capital One's cause of action to accrue, and was also the event that actually resulted in damages to Capital One, the breach must have occurred when and where payment was not received, which in this case was Virginia. *See Helmers*, 156 F.2d at 50-51; *see also Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010) (finding that breach of a Discover credit card contract accrued in Delaware because it was "the place where Discover sustained the economic injury," and therefore New York's borrowing statute applied with the result of Delaware's shorter statute of limitations governing the dispute); *Hamid v Stock & Grimes, LLP*, 2011 WL 3803792 (E.D. Pa. Aug. 26, 2011) (determining that "the final significant event" triggering statute of limitations for failure to pay a debt occurred in the place where payment was to be received because damages occurred both when and where the creditor did not receive payment on the date payment was due).

PRA relies on three cases in particular to support its proposition that the breach of a contract to pay money accrues where the decision not to pay was made, which PRA assumes, without any evidence, was made in Kentucky. These cases, however, are each distinguishable from the case at hand.⁴ First, *Willits v. Peabody Coal Co.* actually supports the Court's reasoning explained above because when determining where a breach of contract action accrues, the Sixth Circuit also looked to cases that analyzed the timing of accrual. *See Willits v. Peabody Coal Co.*, 1999 WL 701916, at *12 (6th Cir. Sept. 1, 1999) (table decision). For instance, the

---

³ Even if Conway had somehow alerted Capital One of his intention not to pay before the due date passed, Capital One arguably would not have had a cause of action against him until that date had actually passed.

⁴ The Court also notes that none of the three cases PRA relies upon were decided by Kentucky courts or gave definitive guidance concerning the interpretation of Kentucky law. As in this case, they were each decided by federal courts making their best prediction of Kentucky law.

14

court referenced *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, in which the court explained that "[u]sually an action accrues at the time of infliction of a wrong or breach of a contract." 305 S.W. 2d 308, 311 (Ky. 1957). The court in *Willits* further illustrated this rationale by quoting the following from its prior opinion in *Helmers v. Anderson*:

> The time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. The final act which transforms the liability into a cause of action necessarily has both aspects of time and place. It occurs at a certain time and in a certain geographical spot.

*Helmers*, 156 F.2d at 51. Stated otherwise, accrual in contract actions occurs "when and where the breach occurs and the injured party holds the right to sue." *Swanson*, 423 F.App'x at 593-94 (quoting *Willits*, 1999 WL 701916, at *13). The reasoning in *Willits* thus supports the rationale that causes of action accrue when the final act which allows a suit to be brought has occurred, an act which necessarily includes both time and place.

Although the *Willits* court ultimately decided that breach occurred in the place where the defendant miscalculated the payment rather than in the many locations where the plaintiffs received the wrong payment amount, the court based its reasoning on facts that were almost exactly the opposite of the facts in the present case. *See Willits*, 1999 WL 701916, at *13. The *Willits* court expressly declined to rely on cases that found breach of contract occurred where the damages were sustained precisely because each of those cases involved situations where payments were required to be sent by a particular day to a particular location defined in the contract,[5] while in *Willits* one party was required to make multiple payments from one central

---

[5] The cases distinguished by the *Willits* court are all more applicable to the case at hand because they involved situations in which time and place of payment were material to the contract. *See, e.g., Helmers*, 156 F.2d at 51-52 (finding that breach occurred at location of receiver's office where shareholders were required to pay their

15

location to several different parties in different locations. *Id*., at *13. The court found that because the locations of the recipients "were immaterial to the obligation to pay," it would be highly impractical to decide that the breach occurred at all the many different locations where multiple people received the wrong payment on several different days. *Id*. In contrast, Conway was contractually required to make a payment to a particular location in Virginia by a certain date, which he failed to do. Presumably, Capital One has similar agreements with multiple customers in multiple locations, but receives payments from those customers at one central location. It would be impossible for Capital One to know where any of those customers happen to be when they *decide* not to pay. Rather, as a practical matter, the only way Capital One can determine a customer is in default is when payment is not received at the central location in Virginia by a certain date. Thus, the Court finds the *Helmers* case involving obligations of many people to pay at one location to be more analogous to the case at hand than *Willits*, and accordingly, the injury that gave rise to the cause of action occurred when and where Conway's payment was not received in the Virginia office.

PRA also urges the Court to rely on two other cases, *Combs* and *White,* which are both distinguishable from Conway's case as well. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568 (6th Cir. 2004); *White v Hartford Life Ins. Co*., 2008 WL 4104487 (W.D.Ky. Sept. 3, 2008). First, neither case involved an action to collect on a credit card debt, or any allegations concerning the FDCPA. Second, both cases were in federal court on the basis of diversity jurisdiction, and did

---

assessment but failed to do so); *Bank of Boston Int'l v. Arguello Tefel*, 626 F.Supp. 314, 317 (E.D.N.Y. 1986 (where promissory note had language requiring payment to be made "at the head office of the First National Bank of Boston, in Boston, Massachusetts"); *Baker v. First Nat'l Bank*, 603 P.2d 397, 398 (Wyo. 1979) (noting that the debt was "to be paid in Colorado at a specified time" but was not then and there paid, and therefore the "cause of action accrued at. . . the time and place where that is not done which ought to be done").

not involve definitive rulings on Kentucky law, which both courts admitted was very sparse concerning where breaches of contract occur. Third, although the facts in *White* also involved payment of a debt, *White* involved several other issues such as agency law and negotiable instruments which are not implicated here, and the court in *White* merely "discuss[ed] but [did] not rule on the statute of limitations issues." *Hall,* 2013 WL 5550838, at *3 (quoting *White*, 2008 WL 4104487, at *1). Additionally, *White* is not binding on this Court since it is an unpublished decision from another federal district court. Finally, *Combs* in particular is unhelpful to the present analysis because it concerned the proper interpretation of Kentucky's borrowing statute, which is not disputed here, and it primarily analyzed the anticipatory breach of an insurance contract, which is also not at issue in the instant case. *See Combs*, 334 F.3d at 598-602. In *Combs*, the defendant insurance company sent a message announcing its decision not to pay money claimed on an insurance policy, and thus its decision not to pay was clearly the action giving rise to the alleged breach of contract – a decision that was easily traced to a particular time and place. *See id*. at 598-99. In contrast, the parties in the case at hand present no arguments concerning anticipatory breach, nor can they establish with certainty when and where Conway made a decision not to pay his credit card bill.[6] Unless Conway sent Capital One a message announcing his decision not to pay them, his situation is distinguishable from that in *Combs* because it is nearly impossible to prove when and where Conway made a decision to breach his contract. For Conway, both time and place were material to the fulfillment of his contractual obligation – a fact which distinguishes his case from those that PRA relies upon.

---

[6] PRA *assumes* this decision occurred in Kentucky, but what if Conway were vacationing in another state when he made that decision, or what if he simply missed a payment and then was unable or unwilling to make further payments long after the initial due date was past?

17

Moreover, Conway presents a policy argument which this Court believes supports a plausible conjecture that other Kentucky courts would choose to apply the Virginia statute of limitations even when the debtor is a Kentucky resident. As Conway points out, Capital One and other credit card companies have taken advantage of Virginia's laws in order to avoid Kentucky's stricter usury laws. However, in this sole aspect of a shorter statute of limitations, Virginia law will actually be more favorable to Conway than Kentucky's law – indeed, such a result is actually one of the primary purposes for which borrowing statutes are enacted. *See Cope*, 331 U.S. at 466. Several Kentucky trial courts also have given some indication that Conway's policy argument is not based purely on conjecture. For instance, a judge in Jefferson District Court recently ruled on this same issue in *LVNV Funding, LLC v. Hall*, 12-C-013045 (Jefferson Dist. Ct. Order entered March 7, 2013).[7] That court found that Kentucky's borrowing statute required the application of Virginia's shorter statute of limitations for credit card debt and dismissed LVNV's debt collection suit because it was brought more than three years after the cause of action accrued – an event the court apparently based on the date payment was due but was not received.[8] [R. 8-1 at 7-12.]

---

[7] Although PRA contests that this issue was not fully briefed or considered in that case [R. 10 at 8], the plaintiff later sued in federal district court on similar grounds as Conway has in the present case, and the federal court noted it had no power to review the Jefferson District court's decision to apply Virginia's shorter statute of limitations. *See Hall v. LVNV Funding, LLC*, 2013 WL 5550838, at *3.

[8] The Court notes that PRA has also presented a trial court's decision from Jefferson Circuit which did not apply Kentucky's borrowing statute, but the language in that decision implied that the parties had a signed agreement that proof of *mailing*, or otherwise authorizing payment, was the act that discharged the debtor's obligation rather than the bank's receipt of the payment – "[I]t is clear that the parties agreed that failure to pay the amounts owed, not the failure to receive them, would constitute a breach." *First Resolution Investment Corp. v. Forsythe*, 12-CI-06819 (Jeff. Cir. Ct. Order entered June 12, 2013). In contrast, the date and place of receiving payment appear to be material to discharge Conway's obligation.

Lastly, Conway has moved to strike a statement in PRA's Reply asserting that Kentucky trial courts have not substantively addressed the pertinent issues of this case. [R. 11 at 1-2.] In support, Conway attached several exhibits attempting to show that these issues had been argued at the Kentucky trial court level in at least two different cases. Because the Court did not need to rely on those cases in reaching the decision explained above, the parties' arguments concerning those cases are irrelevant, and accordingly, the motion to strike will be denied.

## IV

The parties are reminded that this is not the stage of litigation in which the Court must determine whether PRA has actually violated the FDCPA. Here the Court merely finds that Virginia's statute of limitations applies to PRA's debt collection against Conway, and therefore Conway's complaint has stated a plausible claim with sufficient detail to put PRA on notice of the allegations against it. *See Twombly*, 550 U.S. at 557. Accordingly, and the Court being sufficiently advised, it is hereby ORDERED as follows:

1. Defendant PRA's Motion to Dismiss [**R. 7**] is **DENIED**; and
2. Plaintiff Conway's Motion to Strike [**R. 11**] is **DENIED as MOOT**.

This the 31st of March, 2014.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge