UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| SEAN CONWAY | ) | |
| | ) | Civil No: 3:13-cv-007-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| PORTFOLIO RECOVERY | ) | **ORDER** |
| ASSOCIATES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

At the heart of this action is a federal question concerning application of the Fair Debt Collections Practices Act, yet, the viability of Mr. Conway's claim rests on an elementary question of Kentucky state law: where does a particular cause of action accrue. On March 31, 2014, this Court denied Defendant Portfolio Recovery Associates' Motion to Dismiss. Since that time there was an ensuing dismissal, appeal to the Sixth Circuit, and remand following an intervening decision by the Supreme Court of the United States that modified the then Sixth Circuit precedent. Now, this matter is once again before the Court, upon the Defendant's Motion for Reconsideration and Motion for Summary Judgment [R. 33], in which Portfolio Recovery Associates requests that the Court reconsider its previous ruling and grant summary judgment on a dispositive matter of law.

**I**

The facts of this case are already in the record, but a succinct recitation is helpful. The Defendant, Portfolio Recovery Associates, LLC ("PRA"), filed suit against Sean Conway in Shelby District Court of Shelby, Kentucky, on March 28, 2012, seeking to collect an alleged debt

on a credit card. [R. 1 at 2; R. 8 at 2.] At all times relevant to this dispute, Conway was a citizen and resident of Shelby County, Kentucky. [R. 33 at 4.] Capital One Bank (USA), N.A. ("Capital One") issued a credit card to Plaintiff Conway in September, 2006, and Mr. Conley subsequently used the credit card to make personal purchases. [R. 7 at 2.] Conley made his last payment on his Capital One credit card on February 29, 2008, [R. 1-1 at 3] and failed to make the next payment in March, 2008, or any further payments afterward.

In October, 2008, Capital One charged off Conway's balance of $1,288.89. PRA then purchased Conway's account from Capital One on November 17, 2008. The parties do not dispute that PRA is the legitimate assignee of Capital One, thereby retaining all claims and defenses against Conway that Capital One would have had. [*See* R. 7 at 2; R. 8 at 2.] The parties do not dispute that PRA acquired Capital One's cause of action against Conway, nor do they dispute that this cause of action accrued no later than late March, 2008, and no earlier than February 29, 2008. [*See* R. 8 at 2, 5.] Also, the parties agreed that, as assignee of the claim, PRA's cause of action against Mr. Conway accrued in the same location as Capital One's cause of action. [R. 33 at 8.]

In March, 2012, approximately four years after PRA's cause of action against Conley accrued, PRA filed a debt collection lawsuit against Conley in district court in Shelby County, Kentucky. On October 18, 2012, the parties filed a Joint Stipulation of Dismissal in Shelby District court, dismissing all claims against Conway. Conway then filed suit in this Court, alleging that PRA had violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq*. by bringing a collection suit against Conway that was time-barred by the statute of limitations. [R. 1.] Conway also brings this suit on behalf of all other persons in Kentucky similarly situated. Conway's complaint seeks statutory damages for the alleged violation of the

Act, attorney's fees, litigation costs, and any other relief the Court deems appropriate.

PRA has asked this court to reconsider its prior ruling on Defendant's Motion to Dismiss and moves for Summary Judgment. [R. 33.] Conway argues that the Court properly denied the motion to dismiss and that the Virginia statute of limitations applies. PRA maintains that their collection efforts did not violate the FDCPA because PRA brought the collection suit against Conway within Kentucky's five-year statute of limitations, and thus the suit was not time-barred. [R. 7 at 1-3.] Conway argues that Kentucky's borrowing statute is applicable in this case, and that under Kentucky's borrowing statute, Virginia's three-year statute of limitations should apply instead of Kentucky's. As before, the issue before the Court is whether Kentucky's borrowing statute requires the application of Virginia's statute of limitations or whether the borrowing statute is inapplicable and Kentucky's statute of limitations must apply.

In its initial ruling on the motion to dismiss, the Court's analysis was substantially influenced by the location where payments were due. But, this issue had not been briefed by the parties. PRA has since provided additional facts in the record and directed the Court to the Customer Agreement which clarifies that the card holder's primary obligation is in the form of a "promise to pay [Capital One]." [R. 33-7 at 2.] Even so, the agreement merely stated that payment was to be sent to the "address for payment stated on your periodic statement." [R. 33-7 at 2.] A review of the relevant account statements reveals that Mr. Conway's January – February 2008 statement provided a preaddressed coupon and envelope that directed payment to a P.O Box in City of Industry, California, or Plaintiff was alternatively directed to pay through a free check by phone service or online through the bank's website. [R. 33-8 at 2.]

The February – March 2008 statement directed Mr. Conway to pay online or to send a check to a P.O. Box located in Carol Stream, Illinois. [R. 33-9 at 2.] The March – April 2008

3

statement included a check by phone option, online pay methods, and like the previous statement forms, had a preaddressed coupon that directed enclosed payments be sent to a P.O. Box in Carol Stream, Illinois. [R. 33-10 at 2.] A final exhibit contained statements from April to September 2008, all of which provided the previously discussed options for payment of the debt and contained preaddressed coupons directing the cardholder to mail payments to a payment processing center in Carol Stream, Illinois. [R. 33-11.]

Even though the facts of this case are rather straightforward, the procedural posture is more complicated. Following Denial of the Defendant's initial Motion to Dismiss [R. 16], the instant Motion for Reconsideration was filed. [*See* R. 33.] Nearly simultaneously, Defendant filed a Motion to Dismiss for Lack of Jurisdiction pursuant to 12(b)(1) that was subsequently granted [R. 67], as the Court determined that it lacked jurisdiction because Defendant's Rule 68 offer of judgment rendered Conway's claims moot. [R. 67 at 13.] That ruling was appealed [R. 73] and despite the fact that the District Court "heed[ed] the then-governing precedent of [the Sixth Circuit]," this Court's 2015 ruling and judgment [R. 67, 68] were vacated and the matter remanded because of the Supreme Court's holding in *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, (2016), as revised (Feb. 9, 2016). [R. 77 at 2.] The case was then reopened and the pending motions became ripe for consideration.

## II

### A

Federal Rule of Civil Procedure 60(b) allows a court to reconsider a prior final judgment, order, or proceeding in certain proscribed circumstances, such as mistake, excusable neglect, newly discovered evidence, or fraud. The statute includes a catch-all category, allowing reconsideration for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Though

granting reconsideration pursuant to Rule 60(b) is a matter within the court's discretion, allowing reconsideration is an exception rather than common practice. A court's power is limited by public policy favoring the finality of judgments. *See Blue Diamond Coal Co. v. Trs. Of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001).

Defendant's request for reconsideration seemingly falls under Rule 60(b)(1), which provides that the "court may relieve a party . . . from a[n] . . . order" for a number of reasons including "mistake, inadvertence, surprise, or excusable neglect," because PRA argues that the court made a number of factually incorrect findings that resulted in a mistaken legal conclusion. Fed. R. Civ. P. 60; [*see* R. 33 at 4]; *see also Cummings v. Greater Cleveland Reg'l Transit Auth.*, No. 16-4229, 2017 WL 3298579, at *2 (6th Cir. Aug. 3, 2017) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997), which held that vacatur is appropriate under Rule 60(b)(5) "when the party seeking relief . . . can show a significant change either in factual conditions or in law.")

**B**

**1**

PRA believes that the Court's prior ruling on its Motion to Dismiss "included a fundamental error of fact, which in turn led to an incorrect conclusion of law that should be corrected." [R. 33 at 2.] In the March 31, 2014, Memorandum Opinion & Order concerning Defendant's Motion to Dismiss, the Court, *sua sponte*, raised the issue of where payments were to be made and concluded that Mr. Conway was "obligated to make his payment" in Virginia since Capital One was headquartered in Virginia. [R. 16 at 13.] Portfolio Recovery Associates now argues that this factual error resulted in misapplication of a number of cases including *Abel v. Austin*, 411 S.W.3d 728 (Ky. 2013), which was not decided until after briefing on the initial motion was completed. [R 33 at 3.] Plaintiff opposes Defendant's motion for reconsideration,

5

believes that the Court properly applied *Abel*, and urges the Court to deny the motion for reconsideration. [*See* R. 36.]

Besides factual issues concerning where Mr. Conway could send his credit card payments, Defendant highlights a critical nuance concerning a cause of action and resulting claim that sounds in tort as opposed to a claim that sounds in contract. PRA's Motion argues that an action sounding in tort requires "infliction of a wrong and damages before a cause of action accrues, [but] a contract claim accrues . . . on the date of the breach." [R. 33 at 17.] Accordingly, PRA concludes that the cause of action accrued within the state, the Kentucky borrowing statute does not apply, and application of the Kentucky statute of limitations to this action must result in dismissal of Mr. Conway's claim.

As this Court has stated before, were PRA to bring a collection suit after the statute of limitations had run, that collection effort may constitute "unfair or unconscionable means to collect or attempt to collect" a debt because the collection effort would be barred by the statute of limitations. 15 U.S.C. § 1692f(1); *see* [R. 16 at 4.] Mr. Conway's credit card agreement does not contain the necessary terms to constitute a written contract, [R. 16 at 6], but these agreements are commonly treated as contracts not in writing. S*ee, e.g., Portfolio Acquisitions, LLC v. Feltman*, 909 N.E.2d 876, 883-84 (Ill. App. 2009) (applying statute of limitations for an oral contract to a credit card action because the credit card agreement did not include all essential elements within its four corners); *Delrey v. Capital One Bank*, 2009 WL 5103229 (Fla. Cir. Ct. July 7, 2009).

Previously, the Court focused on the statutes of limitations concerning unwritten contracts in both Kentucky and Virginia, as the decision to apply one statute or the other is dispositive in this matter. The applicable statute of limitations in Kentucky for actions on accounts and

*unwritten* contracts is five years, KRS 413.120(1), (10), but the applicable statute of limitations in Virginia for unwritten contracts such as credit card agreements is three years, Va. Code § 8.01-246(4). Therefore, if Virginia's three-year statute of limitations applies, the suit is barred, whereas if Kentucky's statute of limitations applies, PRA's suit is within the five-year time period and Mr. Conway's claim must fail.

In instances such as these, the Kentucky borrowing statute, the procedural law of the forum state, determines issues concerning which state's statute of limitations applies. *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). The purpose of state borrowing statutes is generally to bar suits against the state's residents "if the right to sue [the resident] had already expired in another state where the combination of circumstances giving rise to the right to sue had taken place." *Cope v. Anderson*, 331 U.S. 461, 466 (1947). "Moreover, limitations on federally created rights to sue have similarly been considered to be governed by the limitations law of the state where the crucial combination of events transpired." *Id.* In Kentucky, the borrowing statute (and courts) use an accrual approach, rather than most significant relationship test, for determining where an action has arisen. *See Swanson v. Wilson*, 423 F. App'x 587, 594 (6th Cir. 2011)[1]. The Kentucky borrowing statute provides as follows:

> When a cause of action has arisen in another state or country, and by the laws of this state or country where the cause of action accrued the time for the commencement of an action thereon is limited to a shorter period of time than the

---

[1] The Sixth Circuit discussed several advantages of a "most significant relationship test" but found that Kentucky Court's use an "accrual approach" and that this does "produce several meaningful policy advantages" because "[i]f Kentucky fails to respect that a cause of action accrues in a foreign jurisdiction, like New York, although the final event necessary for the cause of action occurred in New York, Kentucky shows disrespect for New York's territoriality in derogation of comity principles that the Kentucky Supreme Court may value." *Swanson v. Wilson*, 423 F. App'x 587, 593 (6th Cir. 2011) (quoting *Combs v. International Ins. Co.*, 354 F.3d 568, 691 (6th Cir. 2004).

7

> period of limitation prescribed by the laws of this state for a like cause of action, then said action shall be barred in this state at the expiration of said shorter period.

Ky. Rev. Stat. § 413.320.

The Court of Appeals has provided a three-step analysis to determine whether the Kentucky borrowing statute should be applied:

> (1) did the cause of action accrue in another state? (2) If so, is that state's statute of limitations for the particular cause of action shorter than the corresponding Kentucky statute of limitations? (3) If so, application of the accrual state is applied; if not, Kentucky's statute of limitations is applied. *See Willits v. Peabody Coal Co.*, Nos. 98–5458, 98–5527, 1999 WL 701916, at *12 (6th Cir. Sept. 1, 1999))

*Swanson v. Wilson*, 423 F. App'x 587, 593 (6th Cir. 2011). Of primary importance then, is the threshold question of whether Portfolio Recovery Associates' (originally Capital One's) cause of action accrued in another state or within the Commonwealth of Kentucky. If the cause originated in Kentucky, the Kentucky borrowing statute is inapplicable and Mr. Conway's claims must fail as the five year statute of limitations had not yet run. *See* KRS 413.120(1), (10).

To determine where a cause of action accrued, the Court must apply Kentucky law. *See Cope v. Anderson*, 331 U.S. at 466-67 (applying state law to determine where a cause of action accrued for purposes of that state's borrowing statute). In its previous order the Court noted that "Kentucky law is unclear concerning *where* a breach of contract action accrues." [R. 16 at 8.] This remains the case, *see e.g. Swanson v. Wilson*, 423 F. App'x 587, 593 (6th Cir. 2011) ("Where a cause of action accrues, for purpose of Kentucky's borrowing statute, is unclear."), but, with a developed factual record and the benefit of briefing that was not previously provided, the Court has reached a different conclusion concerning where the cause of action arose in this matter.

When a federal court must apply substantive state law concerning an issue of first impression, or an issue which that state's courts have not comprehensively addressed or

8

definitively ruled on, it is the Court's "duty. . . to decide unsettled issues of state law as a Kentucky court would decide them." *Kelly v. McFarland*, 243 F.Supp.2d 715, 717 (E.D. Ky. 2001) (citing *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1289-90 (6th Cir. 1982)); *see also Ennes v. H&R Block Eastern Tax Servs., Inc.*, 2002 WL 226345, at *2 (W.D. Ky. Jan. 11, 2002) (citing the same). In doing so, the Court "must predict" how the state courts would rule. *Id.*; *see also Swanson v. Wilson*, 423 F.App'x 587, 594 (6th Cir. 2011) (noting that in "highly uncertain area[s] of state law," federal courts must "make an educated '*Erie* guess'") (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004)). Upon Defendant's motion, this requires the Court to reconsider its ruling on the narrow question of where the cause of action accrues, according to the meaning of that concept in Kentucky's borrowing statute.

In the most recent ruling on the matter, *Abel v. Austin*, 411 S.W.3d 728, 736 (Ky. 2013), the Kentucky Supreme Court found that "*where* an action 'accrues' is inextricably intertwined with *when* it accrues." *Id.* (citing *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 243 n. 7 (6th Cir. 2009). "The place where a cause of action arises is the place where the operative facts that give rise to the action occur.... [I]t is the happening of the last of such facts which brings the cause of action into existence[.]" *Abel*, 411 S.W.3d at 736 (Ky. 2013) (citing *Helmers v. Anderson*, 156 F.2d 47, 50 (6th Cir.1946).

What *Abel* and *Helmers* look to is the "final act which transforms liability into a cause of action [which] necessarily has both aspects of time and place." *Id.* While this Court's previous opinion, and *Abel*, hold that "a cause of action cannot exist until the Conduct causes injury that produces loss or damage," this statement does not specifically identify the legal source of the cause of action at issue. [R. 16 at 11.] But, following this statement, the *Abel* Court further explained, "[w]e recognized in *Pedigo v. Breen* that "[a] professional negligence claim does not

9

accrue until there has been a negligent act and until reasonably ascertainable damages are incurred." *Abel*, 411 S.W.3d 728 (citing *Pedigo v. Breen*, 169 S.W.3d 831, 833 (Ky.2004)). While the *Abel* Court later discussed these matters without distinction, causes of action concerning negligent acts and negligence are generally based upon common law tort claims, not breach of contract claims. *See Wright v. Gen. Elec. Co.*, 242 S.W.3d 674, 677 (Ky. Ct. App. 2007) (discussing common tort law claims sounding in negligence).

In the Court's previous order, it was clear that the contract between Mr. Conway and Capital One had been breached. [R. 16 at 5 ("Here, the parties do not dispute that Conway breached his contract with Capital One.")] Mr. Conway entered into a Customer Agreement with Capital One [R. 33-7] by which he would use their credit card for purchases but he promised to pay Capital One for the authorized expenses that occurred on his line of credit. Mr. Conway made a final, partial payment, on his account through the online computer system on February 29, 2008. After that date, he failed to make further payments despite carrying a past-due balance on his account and having agreed to pay for all authorized expenses. [R.33 at 6-7.] Mr. Conway could have paid his account balance using the preaddressed coupons provided in his monthly statement, over the phone through a free check by phone service, or through Capital One's payment website, yet he chose not to pay. [R. 33-8, R. 33-10.]

**2**

In *Willits v. Peabody Coal Co.*, 188 F.3d 510 (6th Cir. 1999), the Sixth Circuit held that "[u]sually an action accrues at the time of infliction of a wrong **or breach of a contract**. *Id.* (emphasis added) (quoting *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957). The *Willits* Court found that Ky. Rev. Stat. § 355.2-725(2) was guided by the UCC concerning contracts for sale, and in the context of a statute of limitations, "a breach can occur

before the aggrieved party actually knows of it and is damaged by it." *Willits*, 188 F.3d 510 (6th Cir. 1999). In the Court's previous order [R. 16] *Willits* was found to have "almost exactly the opposite of the facts in the present case," but, after receiving the benefit of additional briefing on the matter, it is clear that *Willits* is quite similar to the instant action.

In *Willits*, an individual conveyed land and mineral rights to a coal company that agreed to pay royalties on coal that was mined from the owner's land. A modified agreement was eventually acquired by Peabody Coal Co., whose primary obligation was to continue paying an appropriate royalty on coal mined from the Missouri Corporate office and send those payments to multiple individuals. Looking to the Court's holding concerning the Kentucky borrowing statute, the *Willits* Court was required to determine whether the Kentucky or Missouri statute of limitations applied. *See Willits v. Peabody Coal Co.*, 188 F.3d 510, at *11 (6th Cir. 1999).

In *Willits*, we have "the failure of one correctly to pay many in diverse locations." *Willits*, 188 F.3d 510 at *13. Mr. Conway's case is analogous, as his overarching obligation was to pay his credit card bill in a timely manner. While he only had to pay one (Capital One), the payment could be made in many diverse locations. Where Mr. Conway paid his bill was not a material issue, as the act could be performed in multiple locations – online, by mail to Illinois, California, over the phone, or at a Capital One branch. In determining where the cause accrued, the Court of Appeals discussed how Peabody Coal Company "calculated the royalties at its office in Missouri, and sent the payments from that office" and was "required to pay the Plaintiffs whether the Plaintiffs showed up at Peabody's Missouri office, or were living in Kansas or had just moved to China." *Id.* The Sixth Circuit then determined that the breach of contract occurred in the Missouri office and that:

> It would be unworkable and irrational to hold that the cause of action accrued wherever each Plaintiff happened to receive his or her deficient check. In a continuing injury case

11

such as this, if a Plaintiff moved several times over the course of the years, she would have separate causes of action in each state in which she lived. Moreover, all of the alleged wrongful conduct occurred at the Peabody offices in Missouri.

*Willits,* 188 F.3d 510 at *13. Unlike *Willits*, Mr. Conway did not send deficient checks, rather he breached the agreement, and continued to breach the agreement, through his failure to make any additional payment towards his account balance after the due date.

*Swanson v. Wilson*, 423 F.App'x 587, 594 (6th Cir. 2011), is a more recent case in which the Plaintiff sued her mother, step-father, and several business to receive a settlement relating to her father's accidental death, but recovery was barred by a statute of limitations. In applying the Kentucky borrowing statue, the Court of Appeals provided helpful commentary on the difference between contract and tort based causes of action and their respective locations of accrual. As many Courts have noted, "[w]here a cause of action accrues, for purposes of the Kentucky's borrowing statute, is unclear. In cases, like this one, where the location of accrual is not readily apparent, this Court has looked to when a cause of action accrued to determine the place of accrual." *Swanson v. Wilson*, 423 F. App'x 587, 593 (6th Cir. 2011).

In *Swanson*, the cause of action was tort based, yet the *Swanson C*ourt compared breach of contract reasoning to determine how a right to sue would accrue under a tort action. "[I]n *Willits v. Peabody Coal Co.*, 188 F.3d 510, 1999 WL 701916 (6th Cir.1999), we addressed a breach of contract claim, not a tort claim, but agreed with the parties that 'a cause of action accrues when and where the breach occurs and the injured party holds the right to sue.'" *Swanson v. Wilson*, 423 F. App'x 587, 594-94 (6th Cir. 2011). More specifically, "*Willits* went on to determine that the contract action accrued in Missouri, where the defendant breached the contract, not where the plaintiffs each received their royalty checks by mail." *Swanson*, 423 F. App'x at 594 (6th Cir. 2011). The *Swanson* Court did not find *Willits* to be controlling, because

12

"it relied upon Kentucky's Uniform Commercial Code statute of limitations, regarding contracts of sale, not on any Kentucky law of torts" and "the reasoning that 'a cause of action accrues where the breach occurs and the injured party holds the right to sue'" is not as helpful outside of the "contract-breach action." *Swanson* 423 F. App'x at 594 (6th Cir. 2011).[2]

The Court of Appeals, looking to similar cases discussing contract-breach actions, also found that "*Combs* ultimately predicted that under Kentucky law, the cause of action 'accrued' in the place of breach for a contract suit. It did not, however, reach the issue here —whether, in a torts case, the place of breach or place of injury is "where" the claim accrued." *Swanson* 423 F. App'x at 594 (6th Cir. 2011) (referencing *Combs v. International Ins. Co.*, 354 F.3d 568, 691 (6th Cir. 2004)). In *Swanson*, the Court of Appeals then discussed *Queensway Financial Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141 (Ky. 2007), to determine that tort and fraud based actions accrue following a wrong and the infliction of some injury that results in loss. *See* 423 F. App'x at 594-96 (6th Cir. 2011).

The law of the Sixth Circuit, the appellate Courts of Kentucky, and our fellow district courts supports the general principle that a cause of action accrues when and where a contract is breached. *See, e.g., Swanson* 423 F. App'x at 594 (6th Cir. 2011) (referencing *Combs v. International Ins. Co.*, 354 F.3d 568, 691 (6th Cir. 2004); *Hoskins' Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957) ("Usually an action accrues at the time of infliction of a wrong or breach of a contract); *Easterly v. Metro. Life Ins. Co.*, No. 2006-CA-001580-MR, 2009 WL 350595, at *6 (Ky. Ct. App. Feb. 13, 2009) ("It has long been the law of the

---

[2] The Court of Appeals then interpreted the *Willits* holding in a tort context and determined that, for torts, "a cause of action does not accrue until both the wrong (breach) occurs and the injured party holds the right to sue: in other words, injury must occur before the action accrues." *Swanson* 423 F. App'x at 594 (6th Cir. 2011). But, per *Swanson* and *Willits*, in the context of a contract-breach action, "a cause of action accrues when and where the breach occurs and the injured party holds the right to sue." *Id.*

13

Commonwealth that the limitations period begins to run on a claim of breach of contract when there is a refusal by one party to perform under the terms thereof"); *Lindsey v. U.S. Bank Nat'l Ass'n*, No. 4:15-cv-00119-JHM, 2016 U.S. Dist. LEXIS 60981, at *4 (W.D. Ky. May 9, 2016) ("[A]n action accrues at the time" of the "breach of a contract.") (quoting *Hoskins Adm'r v. Kentucky Ridge Coal Co.*, 305 S.W.2d 308, 311 (Ky. 1957). Mr. Conway's response to the motion to dismiss [R. 8] stated that "[t]he Capital One Customer Agreement makes clear that the breach of the Customer Agreement occurs when payment is not timely received." [R. 8 at 16.] The Customer Agreement defined one method of "Account Default" as any situation where "you do not make any payment when it is due." *Id.* And, the parties agree that Mr. Conway breached the customer agreement because he chose not to make any payments on his outstanding balance after February 29, 2008. [R. 1-1 at 3.]

Nonetheless, the Plaintiff argues that the cause of action accrues in Virginia, because "when time and place of delivery of payment are essential elements of a contract, breach of the contract occurs when and where payment is not timely received." [R. 8 at 17 citing *Telegraph Co. v. Lacer*, 122 Ky. 839, 93 S.W. 34 (1906).] However, this antiquated case is inapplicable to the instant action. Time for payment is an essential element of the Customer Agreement, but, following additional briefing on the matter, it is readily apparent that place of delivery of payment did not matter— whether by phone, internet, or mailing a check to a number of processing centers located in various states, Mr. Conway's primary obligation was to reimburse Capital One for expenses that accrued on his account.

Finally, the Court must return to *Abel v. Austin*, 411 S.W.3d 728 (Ky. 2013). Previously, the Court acknowledged that "at the outset that the specific facts of *Abel* are slightly different from the case at hand because in *Abel*, both the deficient payments of the settlement distribution,

14

as well as the receipt of those deficient payments, occurred in Kentucky." [R. 16 at 11.] In *Abel*, one party wired a lump sum of the settlement money for all the appellants to another party in Kentucky, who then distributed the settlement incorrectly to the several appellants who resided in Kentucky. *Abel*, 411 S.W.3d at 731-32. The Kentucky Supreme Court found that the "last act, omission, or failure giving rise to Appellants' claims was the disbursement of settlement money to Appellants…" *Id.* at 736.

> The Kentucky Supreme Court reiterated that:
>
> [t]he time when a cause of action arises and the place where it arises are necessarily connected, since the same act is the critical event in each instance. The final act which transforms the liability into a cause of action necessarily has both aspects of time and place. It occurs at a certain time and in a certain geographical spot.

*Id.* After establishing this standard, the Court analyzed the facts of *Abel* and held that: "[i]f Appellants were, as they claim, shortchanged in the distribution of their settlement money, it happened in Kentucky. More significantly, the deficient payments were received in Kentucky where all Appellants resided and the injurious consequences of the alleged wrongful conduct occurred in Kentucky." But, citing *Queensway*, the Kentucky Supreme Court discusses a tort based action, not contract based action, by stating that "[a] cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred." *Abel*, 411 S.W.3d at 737 (citing *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007)).

Like in *Abel*, Capital One was "shortchanged," as the Bank never received payment from Mr. Conway on his outstanding balance. Unlike *Abel*, the "distribution" of money did not occur in Kentucky, because Mr. Conway's breach occurred after inaction and the failure to perform his contractual duties as opposed to action that constituted a partial payment of the balance owed. *Abel* determined that "Appellants' causes of action accrued *when* the individual checks, allegedly deficient by misappropriated sums of money, were sent to them. *Where* that happened was

15

Kentucky, not in Alabama." *Abel v. Austin*, 411 S.W.3d 728, 737 (Ky. 2013). In contrast, Portfolio Recovery Associates' cause of action accrued when Mr. Conway breached the agreement to pay his credit card bill. This happened when the due date passed without the Plaintiff making payment online, over the phone, in person, or through mail to payment processing centers located in a number of states. Where this breach occurred was Kentucky, not in Virginia.

Much like *Willits v. Peabody Coal*, "[i]t would be unworkable and irrational to hold that the cause of action accrued wherever [Capital One] happened to receive [its] deficient check" as that could have occurred in multiple states, through online resources, over the phone, or at any of the multiple Capital One branch locations. *See Willits v. Peabody Coal Co.*, 188 F.3d 510 at *13 (6th Cir. 1999). Just as the Sixth Circuit found that the breach occurred at the office in Missouri, so too is it appropriate to find that the breach occurred in Kentucky and that the cause of action accrued where Mr. Conway breached the agreement to pay Capital One, as Capital One was damaged by the breach itself. The breach and continuing refusal to pay constituted damage to Capital One but, in addition, the bank had calculable monetary damages that were incurred in the form of Mr. Conway's unpaid balance and the accruing fees added due to late payment and interest.

**3**

This action is before the Court upon a motion to reconsider the Court's previous ruling on a Motion to Dismiss by Defendant, Portfolio Recovery Associates. The Court has reconsidered its previous opinion and now must turn to the Defendant's motion for summary judgment, [R. 33.]

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is

17

under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Here, the Court found, as a matter of law, that Defendant Portfolio Recovery Associates' cause of action accrued within the Commonwealth of Kentucky. Accordingly, the Kentucky Borrowing Statute, Ky. Rev. Stat. § 413.320, does not apply because the cause of action has not "arisen in another state or country." *Id.* The applicable statute of limitations in Kentucky for actions on accounts and *unwritten* contracts is five years, KRS 413.120(1), (10). Since Virginia's three-year statute of limitations does not apply, the original collections lawsuit, brought four years after the cause of action accrued, is not time barred as PRA's suit was well within the five-year time period. Accordingly, there is no genuine dispute as to a matter of fact and the Defendant Portfolio Recovery Associates is entitled to judgment as a matter of law.

### III

Despite drawing all reasonable inferences in favor of the nonmoving party, *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255), the Defendant is entitled to judgment as a matter of law. The Court has reconsidered its prior legal conclusions following additional briefing on substantial factual matters and has reviewed the pleadings, record, evidence, and case law. It is now evident that Mr. Conway's claim that PRA violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, by bringing a collection suit against Conway that was time-barred by the statute of limitations, must fail.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Portfolio Recovery Associates' Motion [**R. 33**] is **GRANTED**; and

2. The Court's Memorandum Opinion & Order [**R. 16**] is **VACATED**; and

3. Any pending motions are **DENIED AS MOOT**; and

4. Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 5th day of September, 2017.

Gregory F. Van Tatenhove
United States District Judge